## S00A0517. DEKALB COUNTY v. ADAMS et al.
### (529 SE2d 610)

HUNSTEIN, Justice.

In November 1998, Ernest Adams filed a pro se petition for mandamus against DeKalb County Sheriff Sidney Dorsey seeking, inter alia, to compel the sheriff to improve medical and food service operations in the county jail. The trial judge to whom the case was assigned, Judge Hilton Fuller of the Superior Court of DeKalb County, appointed counsel for Adams. Counsel made an appearance on behalf of DeKalb County and the sheriff at a hearing in December 1998. Subsequently, another attorney was appointed to represent Adams and the trial judge also ordered the appointment of a paralegal and/or investigator to assist the attorney. The trial judge entered ex parte orders, under seal, which set forth the compensation schedule for the appointed individuals and provided that the submitted fees would be paid from county funds. In September 1999, Adams's counsel filed an amended complaint on behalf of a putative class of jail inmates seeking injunctive and declaratory relief solely under state statutes and the Georgia Constitution. A six day hearing in late September addressed conditions in the jail and also the payment of compensation to Adams's counsel and the appointment of an auditor. The trial judge issued an order on September 29 ordering DeKalb to pay $16,794 in attorney fees and $6,602.87 in paralegal and/or investigator fees.[1] DeKalb filed a protest and a motion to recuse,[2] which the trial judge denied on October 15; the judge also issued a show cause notice why DeKalb should not be held in contempt for failing to comply with the September 29 order. DeKalb went to Chief Judge Robert Mallis who on October 22 entered an order which purported to recuse Judge Fuller and to assign the protest action to Judge Sidney Nation of the Superior Court of Rockdale County. Judge Fuller refused to acknowledge the validity of Judge Mallis's actions and

---

[1] Judge Fuller also ordered the appointment of auditors to investigate jail conditions. That order is not in issue in this appeal.

[2] Sheriff Dorsey filed a motion to recuse a few days earlier which the trial court denied finding, inter alia, that the motion was untimely and the affidavits legally insufficient.

held a show cause hearing October 25-26, after which he held DeKalb in contempt. DeKalb immediately appealed to this Court. On November 3, Judge Nation ruled in DeKalb's favor on the protest action.

1. In its first enumeration, DeKalb contends the trial court erred by holding it in contempt on October 26 because the trial court had been divested of jurisdiction when DeKalb filed its protest and motion to recuse on October 15. Contrary to DeKalb's argument, however, nothing in *McCorkle v. Judges of Superior Court of Chatham County*, 260 Ga. 315 (392 SE2d 707) (1990) or OCGA § 15-6-24 supports DeKalb's position that a superior court is divested of its jurisdiction over a case merely because a county chooses to file a protest over an expenditure ordered by the superior court judge to whom the case was assigned.[3] Likewise, nothing in *McCorkle* changed the well-established procedures applicable to motions to recuse. See Uniform Superior Court Rule 25.1 et seq. See generally *Birt v. State*, 256 Ga. 483 (350 SE2d 241) (1986). Given the untimeliness of DeKalb's motion, see USCR 25.1, the legal inadequacies in the affidavit DeKalb filed with the motion, see USCR 25.2, and the legal insufficiencies of the grounds alleged in the affidavit which presented no basis to warrant recusal, see USCR 25.3, we find no error in Judge Fuller's denial of DeKalb's motion to recuse. Id. DeKalb's reliance on the actions taken by Judge Mallis is misplaced, since Judge Mallis had no authority to issue any order in a case assigned to and under the exclusive control of Judge Fuller, see USCR 3.1 and 3.3, and thus Judge Mallis's "grant" of the ex parte recusal motion could not divest Judge Fuller of jurisdiction over this case. Accordingly, we need not address Adams's argument regarding the propriety of the assignment of the case to Judge Nation pursuant to OCGA § 15-1-9.1. See also USCR 25.4 (C).

2. DeKalb contends the trial court exceeded its inherent power when it ordered DeKalb to commit public funds to compensate the appointed attorney of a civil litigant and thus DeKalb cannot be held in contempt for failing to comply with the order. We agree.

In *Willis v. Price*, 256 Ga. 767 (353 SE2d 488) (1987), this Court held that "[r]egardless of the worthiness of the cause," a trial court cannot appoint counsel to represent an indigent civil litigant "absent a clear state constitutional or statutory authority" providing for payment out of State or county funds. Id. While courts have the inherent authority to take action necessary to discharge their duties efficiently and completely, *Sacandy v. Walther*, 262 Ga. 11, 12 (1) (413 SE2d 727) (1992), "we know of no statute, case, or constitutional pro-

---

[3] We decline the opportunity presented here to adopt the position proposed by the concurring opinion in *McCorkle*, supra.

vision which would permit a trial judge to appoint counsel to a [civil] petitioner, to be paid out of state or county funds." *State of Ga. v. Davis*, 246 Ga. 200, 201 (269 SE2d 461) (1980). This Court has recently reiterated this position in *Gibson v. Turpin*, 270 Ga. 855 (513 SE2d 186) (1999) (no right to appointed counsel for petitioner seeking civil remedy of habeas corpus).

Adams's arguments do not compel a different result. The examples Adams cites for the proposition that a court has the inherent power to appoint counsel for indigent civil litigants and compel payment from county funds all involve either statutory authority or a constitutional mandate. E.g., OCGA § 15-11-26 (e) (counsel in adjudication of delinquency proceedings); OCGA § 15-11-85 (counsel in termination of parental rights proceedings); OCGA §§ 37-3-150, 37-4-110 (counsel in proceedings regarding the mentally ill and mentally retarded); *Vaughn v. Rutledge*, 265 Ga. 773 (1) (462 SE2d 132) (1995) (limited constitutional right to counsel in probation revocation required pursuant to *Gagnon v. Scarpelli*, 411 U. S. 778 (II) (93 SC 1756, 36 LE2d 656) (1973)). The holding in *Brown v. Diaz*, 184 Ga. App. 409 (4) (361 SE2d 490) (1987) is inapposite as that case involved claims under Federal civil rights statutes, whereas Adams's suit is based solely on Georgia law which has no provision comparable to 28 USCA § 1915 (d). Nor does the holding in *Hamm v. Willis*, 201 Ga. App. 723 (411 SE2d 771) (1991) avail Adams, as that case was also a Federal civil rights case and the attorney fee award therein involved the application of OCGA § 9-15-14, which is not in issue in this case. Contrary to Adams's argument, OCGA § 17-12-44 is expressly limited in scope to criminal proceedings[4] and thus does not authorize reimbursement of appointed counsel in this civil proceeding. Finally, because the trial court here was not authorized to appoint counsel to represent an indigent civil petitioner absent a statutory or constitutional provision to compel payment with State or county funds, we decline Adams's invitation to enter "the intense debate over whether the imposition on lawyers of an enforceable obligation to perform . . . legal services, violates the equal protection and due process provisions of our state and federal constitutions . . . or is otherwise immoral or imprudent. [Cits.]" *Sacandy v. Walther*, supra, 262 Ga. at 13 (2), n. 6.[5]

---

[4] OCGA § 17-12-44 states that "*[t]his article* expressly recognizes the inherent power of the court to appoint counsel to represent indigent defendants and to order compensation and reimbursement from county funds in individual cases as the proper administration of justice may require." (Emphasis supplied.) OCGA § 17-12-44 comes within Article 2 of Chapter 12, Volume 17, known as the "Georgia Indigent Defense Act," OCGA § 17-12-30, which was promulgated to provide the constitutional guarantees of the right to counsel and equal access to the courts "to all its citizens in criminal cases." OCGA § 17-12-31.

[5] Adams raised for the first time on appeal the contention that conditions at the jail

3. Our holding in Division 2, supra, renders it unnecessary to address DeKalb's remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who concurs in judgment only as to Division 2.*

DECIDED MAY 1, 2000 —
RECONSIDERATION DENIED MAY 26, 2000.

*Jonathan A. Weintraub, Jeffrey L. Mann, Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray*, for appellant.

*Cruser & Mitchell, William T. Mitchell, Cullen & Miller, Robert W. Cullen, Love & Willingham, Jonathan C. Peters, Middleton, Mathis, Adams & Tate, David F. Walbert, Bondurant, Mixson & Elmore, Michael B. Terry, Robert L. McGlasson*, for appellees.

---

have resulted in such a coercive atmosphere that pre-trial detainees feel compelled to plead guilty to criminal charges in order to obtain transfer to State authorities. Nothing in this opinion precludes a pre-trial detainee from challenging coercive jail conditions in the course of the State's criminal proceedings. See *Wright v. State*, 250 Ga. 570 (300 SE2d 147) (1983) (motion to compel sheriff to provide reasonable conference facilities to ensure privacy of attorney-client conversation).