69359, 69543. GRAHAM v. NEWSOME et al. (two cases).

(330 SE2d 98)

POPE, Judge.

Joe D. Graham, Jr. is an inmate at Georgia State Prison. He filed a pro se action alleging that correctional officers at the institution searched his cell and wrongfully removed a radio, a sapphire ring, a wrist watch, and a pair of sunglasses. Graham was allowed to proceed in forma pauperis. After extensive discovery, a pretrial conference was held, a pretrial order entered, and the case was tried to a jury. The jury returned a verdict for the defendants. After trial the defendants moved the court to assess Graham court costs, and the motion was granted. Graham appeals from the verdict and judgment in case number 69359 and from the assessment of costs in case number 69543. We will consider the two cases together.

1. In his first and third enumerations, Graham argues the trial court erred in not issuing a written order granting him leave to amend his complaint at a status conference held February 22, 1984, and, later, in May, denying him leave to amend. No transcript of the status conference appears in the record. The record shows an order dated May 31, 1984 nunc pro tunc to February 22, 1984 allowing Graham until April 1, 1984 to file discovery in order to amend his complaint. In the period between February 22, 1984 and May 24, 1984, the date of the pretrial conference, Graham made no effort to amend his complaint. "Error must appear from the record sent to this court by the clerk of the trial court. The burden is on the party alleging error to show it affirmatively by the record. Further, there is a presumption in favor of the proper conduct of courts and judicial officers acting within their legitimate sphere." (Citations and punctuation omitted.) *Tab Sales v. D & D Distrib.*, 153 Ga. App. 779, 780 (266 SE2d 558) (1980). OCGA § 9-11-15 allows a party to amend his pleadings as a matter of course and without leave of court at any time before the entry of a pretrial order. Since Graham had the right to amend his complaint before the pretrial order was entered, and did not do so, and since we find nothing in the record to show that the trial court abused its discretion in refusing to allow amendment after entry of the pretrial order, we find no merit in these enumerations.

2. Graham next argues that the trial court erred in not ruling on his discovery motions. Graham does not specify which motions were not ruled upon, nor does he show by the record any harm from such alleged failure to rule. " 'The burden is on the appellant to show error by the record, and when a portion of the evidence . . . bearing upon the issues raised by the enumerations of error, is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result. [Cits.]' " *Jones v. Conlin*, 171 Ga. App. 346, 347 (320 SE2d 188) (1984). The pretrial order makes no mention of any unresolved discovery matters. There is no transcript of the trial. Therefore, this enumeration is without merit.

3. Graham enumerates as error the trial court's failure to hold a pretrial conference until after he filed a writ of mandamus. He merely asserts injury in general and cites no authority nor shows by the record any harm. The enumeration is meritless.

4. Graham argues the trial court erred in not appointing him an attorney. This is a civil case, an action for damages. Graham cites us to the federal and state constitutions for his right to counsel. In *Spencer v. Hopper*, 243 Ga. 532 (2) (255 SE2d 1) (1979), the Supreme Court noted that since habeas corpus was not a criminal proceeding, neither the federal nor state constitution required appointment of counsel. Since an action for damages is not a criminal proceeding, it

follows from the decision in *Spencer* that the trial court did not err in not appointing counsel.

5. Graham next argues that the trial court erred in not causing certain incarcerated witnesses to appear at trial. However, even though Graham contends in his brief, and the defendants concede in their brief, that Graham requested the witnesses at trial, there is nothing in the record to show that subpoenas were properly served and perfected. Without such offer of proof showing service by a method set out in OCGA § 24-10-23, such as a return receipt of registered or certified mail, the trial court cannot enforce the subpoena. See *Harrison v. Langston & Woodson*, 100 Ga. 394 (2) (28 SE 162) (1897). We find no error.

6. Enumerations of error 7 through 11 depend upon consideration of evidence heard by the trial court. Since no transcript has been filed, we must affirm. *Curry v. State*, 148 Ga. App. 59 (251 SE2d 86) (1978).

7. Finally, Graham argues that the trial court erred in granting defendants' motion for costs against him. He argues that he is a pauper and is thus relieved from the payment of costs. OCGA § 9-15-2 sets out the procedure by which one may be relieved from paying court costs. In effect, one must simply subscribe to an affidavit stating one's inability to pay. Upon such showing, the party is relieved from paying such costs. Any other party at interest may challenge the affidavit of indigence by filing an opposing affidavit to the effect that the averments in the pauper's affidavit are untrue. In addition, the trial court, on its own motion, may inquire into the truth of the affidavit of indigence. Once challenged, the issues regarding the truth of the affidavit must be heard and determined by the trial court. Judgment by the trial court on issues of fact concerning the ability of a party to pay costs is final and not subject to appellate review. *Grace v. Caldwell*, 231 Ga. 407 (4) (202 SE2d 49) (1973).

The record discloses that neither the defendants nor the trial court ever challenged the truth of Graham's affidavit of indigence. Therefore, it was error for the trial court to assess costs against Graham. See *Heath v. McGuire*, 167 Ga. App. 489 (4) (306 SE2d 741) (1983). We are aware that many parties, including inmates, may abuse the pauper's affidavit simply to harass an opposing party. However, it is incumbent on parties feeling harassed, or a trial judge who suspects abuse, to challenge the affidavit in accordance with OCGA § 9-15-2.

*Judgment affirmed in Case No. 69359. Judgment reversed in Case No. 69543. Banke, C. J., and Benham, J., concur.*

## ON MOTION FOR REHEARING.

1. We find no merit in Joe D. Graham's motion for rehearing and it is hereby denied.

2. Defendants contend that we erred in Division 7 of our opinion in finding that the trial court erred in assessing costs against Graham. Defendants concede that OCGA § 9-15-2 allows a party to file a civil suit without first paying costs. However, defendants argue that OCGA § 9-15-2 does not completely relieve a pauper of paying costs; if the pauper loses the case, defendants argue, costs are cast upon him just as upon any other losing party. Defendants argue this is mandated by OCGA §§ 9-15-1 and 9-15-11.

OCGA § 9-15-1 reads: "In all civil cases in any of the courts of this state, except as otherwise provided, the party who dismisses, loses, or is cast in the action shall be liable for the costs thereof." OCGA § 9-15-11 provides that when a case is disposed, the costs shall be included in the judgment against the losing party. Defendants argue these two sections, read in conjunction with OCGA § 9-15-2, evince a legislative intent to forgive costs and fees connected with the initial filing of suit in the case of a pauper, but not to forgive ultimate costs in the action if the pauper loses. In support of its argument, defendants cite us to federal decisions, and assert that this is the practice of "virtually every superior court judge of Fulton, DeKalb, Bibb, Butts, Baldwin, Ware and Tattnall Counties. . . ." We are not persuaded by defendants' argument for the following reasons.

The federal statute allowing proceedings in forma pauperis is 28 USC § 1915. Section (a) reads in pertinent part: "Any court of the United States may authorize the commencement, prosecution, or defense of any suit, action, or proceeding, civil or criminal, or appeal therein, without *prepayment* of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs . . ." (Emphasis supplied). Section (e) of the statute reads in pertinent part: "Judgment may be rendered for costs at the conclusion of the suit or action as in other cases. . . ." The federal courts have read their statute to work exactly as defendants argue the Georgia statutory scheme should operate: a pauper's affidavit allows filing and pursuit of the action, but loss of the action authorizes imposition of costs. See, e.g., *Robinson v. Howard Univ.*, 455 A2d 1363 (D.C. 1983); *Flint v. Haynes*, 651 F2d 970 (4th Cir. 1981). This reading seems eminently correct for the federal statute which is couched in terms forgiving a pauper only the *prepayment* of fees. However, compare OCGA § 9-15-2: "When any party, plaintiff or defendant, in any action or proceeding held in any court in this state is unable to pay *any deposit, fee or other cost which is normally required* in the court, if the party shall subscribe an affidavit to the effect that because of his indigence

he is unable to pay the costs, *the party shall be relieved from paying the costs and his rights shall be the same as if he had paid the costs.*" (Emphasis supplied.) It is apparent that the Georgia statute is much broader in scope than is the federal statute. The federal statute waives only the *prepayment* of costs; the Georgia statute for the pauper waives *any* deposit, fee, or other cost; it further states that the party is relieved from paying costs and his rights are considered as if he had paid. OCGA § 9-15-1 simply states the general rule that the losing party pays costs, except as otherwise provided. Clearly, OCGA § 9-15-2 is the exception. OCGA § 9-15-11 is simply an express direction of how the mandate of OCGA § 9-15-1 is to be carried out. Where OCGA § 9-15-1 does not apply, clearly OCGA § 9-15-11 is also inapplicable.

Defendants argue that our decision creates a group of "super citizens . . . incarcerated felons" who may rampage through the courts filing frivolous and harassing suits at will, and that without the ability to assess costs, defendants are powerless to stop these evil "super citizens." Two responses to this argument are in order. First, as defendants note in their own brief, those inmates who have absolutely no money have nothing to fear from the assessment of costs; they would not be deterred regardless of any assessment, for they are judgment-proof. In other words, they are paupers within the meaning of OCGA § 9-15-2. Second, our decision in no way removes from defendants the ability to deter those inmates who have some money by assessing costs. If the inmate has money, defendants or the court on its own motion may traverse the pauper's affidavit. If the court finds that the inmate is not a pauper and assesses costs, that factual finding is final and will not be reviewed by this court.

However, in this case the pauper's affidavit was never traversed, and there is nothing in the record to show that the trial court made any finding of fact regarding Graham's ability to pay. Therefore, it was error to assess costs. *Portis v. Evans*, 249 Ga. 396 (1) (291 SE2d 511) (1982); *Martin v. State*, 151 Ga. App. 9 (9) (258 SE2d 711) (1979).

*Judgment adhered to.*

DECIDED MARCH 4, 1985 —
REHEARING DENIED MARCH 29, 1985 —

Joe D. Graham, Jr., *pro se.*
Michael J. Bowers, *Attorney General,* John C. Jones, *Assistant Attorney General,* for appellees.